UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Dexter Antonio Sheppard, #312344, | C/A No. 4:11-486-CMC-TER |
| Plaintiff, | |
| vs. | Report and Recommendation |
| Lt. Robert Forrest, Timothy Riley, Warden, | |
| Jonathan Ozmint, Agency Director, | |
| Gary D. Lane, Associate Warden, | |
| Ann B. Hallman, Central Grievance Director, | |
| Jerry C. Alexander, Capt at TRCI, | |
| Christine Thompson Grievance Coordinator, | |
| Laura E. Caldwell, Associate Warden, R. L. Turner,[1] | |
| Defendants. | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983[2] action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment, which was filed November 17, 2011. (Doc. #72). Because Plaintiff is proceeding pro se, he was advised on or about November 17, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the procedure for summary judgment and the possible consequences if he failed to respond adequately. (Doc. #73). Plaintiff responded to Defendants' motion on March 29, 2012. On April 5, 2012, Defendants filed a reply. On April 12, 2012, Plaintiff filed a Sur-Reply. (Docs. #95, #96, and #97).

---

[1] By order of the court, Plaintiff's motion to amend his complaint to name R. L. Turner, Disciplinary Hearing Officer for the SCDC, as a party defendant was granted. (See Doc. # 87).

[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge

# STANDARD FOR SUMMARY JUDGMENT

As previously stated, the defendants filed a motion for summary judgment. A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to

which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## DISCUSSION

The prison disciplinary proceedings that Plaintiff alleges violated his constitutional rights concerned his alleged involvement in a riot at the Tyger River Correctional Institution[3] ("TRCI") in March 2010. A disciplinary hearing was held on April 14, 2010, and Plaintiff was sentenced to administrative segregation. Plaintiff appealed this decision to the Administrative Law Court. The SCDC counsel moved to remand the case. The case was remanded for rehearing due to errors. A rehearing was held on November 24, 2010, at which time the 803 riot charge was dismissed and all good time credits and privileges that Plaintiff lost due to the sanctions were restored.[4]

Defendants argue summary judgment should be granted in their favor because they did not violate Plaintiff's constitutional rights and that they are entitled to Qualified and Eleventh Amendment immunity. Defendants submitted the affidavit of Lt. Robert Forrest who attests that he is employed at the TRCI as a Lieutenant and has been employed by the SCDC for approximately six years. (Forrest affidavit, doc. # 72-5). On March 8, 2010, Forrest responded to calls for assistance in the upper yard cafeteria where he observed approximately fifteen to twenty inmates fighting with weapons that included toilet plungers, locks in bags, as well as shanks. (Id.). Forrest was placed on the roof with a shotgun in an effort to contain the riot to the cafeteria after Warden Tim Riley called for a roof top detail. (Id.; Riley affidavit, doc. # 72-6).

---

[3] Plaintiff is currently housed at the Kershaw Correctional Institution.

[4] Allegations of an excessive force incident raised in this action will not be addressed as the excessive force incident was the subject of Civil Action No: 1:10-2424-CMC-SVH.

At the time of the incident, Forrest was a member of the team that investigated gang and contraband related offenses at TRCI and was asked to investigate the riot that occurred on March 8, 2010. (Id.). Forrest's investigation of the March 8, 2010, riot, revealed information which follows. Several inmates indicated that Plaintiff was a Crip gang member who instigated the disturbance. (Id.). Plaintiff went to the Blood gang members and informing them that Inmate Bennett Johnson, a 5%er gang member, "snitched" on a Blood gang member, James Thomason, for possession of a mobile phone which is considered contraband. Prison officials caught inmate Thomason with a mobile phone on March 8, 2010. As a result of Plaintiff's information, several Blood members attacked Johnson and unidentified 5%'ers assisted Inmate Johnson by fighting the Blood gang members and attempting to fight Plaintiff. As a result, Crip members joined in the fight in the cafeteria. (Id.). Most inmates refused to provide written statements after giving verbal statements for fear of gang retribution. (Id.). However, one inmate agreed to provide a written statement regarding Plaintiff's involvement in the riot on March 8, 2010. The inmate stated that "Inmate Dexter Sheppard initiated the trouble that led to the riot" and that "after the riot [Sheppard] told me he stabbed [a] dude in the foot." (Id., Statement attached to affidavit and page 3 of the Disciplinary Hearing transcript of April 14, 2010). Based on the information learned during the investigation, Forrest charged Plaintiff with an 803 violation on March 31, 2010. (Id.). An 803 riot charge is described as "803: Riot: when an inmate, with two or more persons, intentionally participates in conduct that creates danger or damage or injury to property and substantially obstructs the performance of unit operations or institution operations." (Id.).

A disciplinary hearing was held on April 14, 2010. Forrest attended and verified the confidential informant's signature and stated he was present when the informant signed the

4

statement. (Id.). Forrest also provided a detailed report and confirmed to DHO Turner that the report was true and correct and that he believed the informant's statement was accurate and true information. (Id.). Forrest attests that he was also present at Plaintiff's rehearing for the 803 riot charge on November 24, 2010. (Id.). Since Plaintiff had been convicted of the charge at the original hearing, Forrest did not investigate the incident further and therefore, testified that he had no new information or evidence to present. (Id.).

Defendants submitted the affidavit of Captain Richard Turner who attests that he has been employed by the SCDC for approximately thirteen (13) years and is currently employed as a Disciplinary Hearing Officer for the Division of Operations. (Turner affidavit, doc. #72-4). Turner conducted the disciplinary hearing on April 14, 2010, involving Plaintiff. (Id.). An accusing officer cannot make the determination to send an inmate to a disciplinary hearing based on his report. The accusing officer's report is reviewed by a Reviewing Supervisor ( a supervisor on duty) and is then submitted to a responsible authority (Major or Captain). The responsible authority has nine calendar days from the date of the incident to grade the officer's report, and if applicable recommend the charge filed against the inmate based upon SCDC policy, evidence and the officer's report. (Id.). Lt. Forrest charged Plaintiff with an "803: Riot." (Id.). The disciplinary hearing occurred on April 14, 2010, and was recorded via audiotape. (Id.; attached copy of the transcript). At Plaintiff's request, Plaintiff was represented by a counsel substitute. Plaintiff also requested that his accuser, Lt. Forrest, be present at the hearing. (Id.). Lt. Forrest was present at the hearing and presented his report and investigative findings. (Id.). Based on Lt. Forrest's investigation of the 803 Riot charge, Plaintiff went to Blood gang members and told them a 5%' er snitched on Inmate James Thomason, aka AJ Blood, for having a cell phone. (Id.). Several Blood members attacked Inmate Johnson and several

5

unknown 5%'ers came to help Johnson and to fight Plaintiff. Crip members then came to the aid of Plaintiff and the fight involved approximately 15-20 inmates from three gangs. (Id.). Forrest provided a written statement of an inmate witness which was read into the record after Plaintiff was escorted out of the hearing. However, Plaintiff's substitute counsel remained in the hearing to represent Plaintiff. (Id.). Lt. Forrest testified that the written statement provided by the informant was freely given and signed by the informant in Lt. Forrest's presence. (Id.). Turner attests that Plaintiff testified at the hearing and told him that he was "not calling Mr. Forrest a liar" but was not guilty because "no [inmate] or [officer] seen me in the act of the riot." (Id.; and DHO hearing transcript, p. 7). Based on his review of the evidence presented, Turner determined that Plaintiff was guilty of the 803 riot as charged by Lt. Forrest and he sanctioned Plaintiff pursuant to SCDC Policy OP-22.14, to 180 days Disciplinary detention, 114 days loss of good time credits, and 544 days loss of canteen privileges. (Id.; Disciplinary Report and Hearing Record).

Plaintiff was notified of the disciplinary sanctions on April 5, 2010. (Disciplinary Hearing Report attached to Turner affidavit).[5] On November 24, 2010, Turner attests he conducted a rehearing of Plaintiff's 803 Riot charge and heard all the evidence previously presented by Lt. Forrest. (Id.). Based on Plaintiff's request, Lt. Forrest attended and testified that he did not obtain any additional evidence since Plaintiff's original conviction on April 14, 2010. (Id.). Turner attests that based on his review of the evidence presented at the rehearing, he believed there was ample evidence to meet the "some evidence" burden in convicting Plaintiff of the charge but dismissed the

---

[5] Plaintiff appealed the result of his first disciplinary hearing to the South Carolina Administrative Law Court. Upon motion of counsel for SCDC to remand the case due to "errors" in the hearing process, the case was remanded to the SCDC and a second disciplinary hearing was held on November 24, 2010.

6

803 charge due to the previous action by SCDC counsel. (Id.). Turner attests that the policies outlined in OP-22.14 are the policies he follows at every disciplinary hearing, and are the policies he followed in the disciplinary hearing involving Plaintiff. Turner asserts that his decisions are not controlled or influenced by other prison employees or the prison administration. Turner states that at no time did he knowingly violate Plaintiff's constitutional or statutory rights. (Id.).

Defendants submitted the affidavit of Michael J. Stobbe who attests that he has been employed by the SCDC for over thirty-four (34) years and is currently employed as the "Branch Chief Records Management and Release." (Stobbe affidavit, doc. #72-10). The Office of Records Management and Release is responsible for maintaining SCDC central inmate records including but not limited to initial intake records, officer incident reports, and disciplinary documentation, including disciplinary hearing reports and inmate requests to staff. (Id.). Inmates meeting the standard set forth in S.C. Code 24-13-210 are eligible to earn good time credits. (Id.). Inmates in lock-up (SMU) are also eligible to earn good time credits provided they are not convicted of any disciplinary convictions while in SMU. (Id.). Stobbe attests that he reviewed Plaintiff's disciplinary record for the time period of February 3, 2009, through November 30, 2010. (Id.). Plaintiff was admitted to SCDC on February 3, 2009, and initially incarcerated at Kirkland Correctional Institution. (Id.). Plaintiff was transferred to TRCI on December 2, 2009. (Id.). Plaintiff was convicted of Attempted Armed Robbery and Assault and Battery with Intent to Kill. (Id.). Pursuant to 24-13-210, Plaintiff earns three days per month for good time credits. (Id.). From the date of his incarceration to November 30, 2010, Plaintiff earned 147 good time credits, forfeited nine, and lost 21. (Id.). For this time period, Plaintiff had 117 days of good time credit. (Id.). Stobbe attests that the 114 days of good time credits lost as a result of the disciplinary sanction imposed on April 14,

2010, were credited back to Plaintiff on November 24, 2010. (Id.).

**DUE PROCESS CLAIM**

In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court considered how prison disciplinary proceedings must be structured in order to comply with the demands of the Due Process Clause of the Fourteenth Amendment. The Court stated that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. The Court set forth five requirements of due process in a prison disciplinary proceeding where a liberty interest is at stake: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id. at 563–70. Additionally, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

In this case, Plaintiff appealed the initial decision of the disciplinary hearing officer to the Administrative Law Court. The SCDC counsel moved to remand the case for a second disciplinary hearing. The case was remanded due to "errors" and a second hearing was held. With regard to the

first hearing, the record does not disclose what "errors" resulted in remand upon motion of counsel for the SCDC.[6] With regard to the second hearing, the 803 Riot charge was dismissed. SCDC restored all of the good time credits and privileges that Plaintiff had lost due to the sanction. (Stobbe affidavit, doc. #72-10).

There is no evidence that Plaintiff did not receive all of the requirements established in Wolff, supra. Plaintiff was notified in writing of the charges against him (see doc. #72-4, p. 44, Disciplinary Report and Hearing Record), he was allowed to present evidence and to have Forrest present, he was afforded the right to a counsel substitute and utilized that right during the hearing, no witnesses, documentation or evidence were excluded from the hearing, and DHO Turner[7] prepared a written statement of the evidence relied upon and the reasons. As previously discussed, at the hearing, Lt. Forrest presented evidence of Plaintiff's involvement including the written statement of the inmate. Because of fear of gang retaliation, Plaintiff was escorted from the hearing room while Forrest revealed the identity of the inmate informant and submitted the written statement, but Plaintiff's counsel substitute remained in the hearing to defend Plaintiff when the informant was identified. (Turner affidavit).[8] Plaintiff was brought back into the hearing room immediately after the entry of the Inmate Informant's identity and written statement into the record. (Id.). Plaintiff was also allowed to testify at the hearing. Furthermore, clearly the "some evidence" standard was satisfied. Therefore, Plaintiff fails to show that Defendant Turner violated his

---

[6] Plaintiff fails to show the basis for the remand.

[7] Plaintiff is entitled to appear before an impartial decision-making body. Wolf, supra. There is no evidence that Turner failed to be impartial or biased.

[8] See Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (holding that Plaintiff could not succeed on due process claim where he had "not demonstrated that he was harmed by [a requested witness] testifying in writing rather than in person").

minimally protected due process rights.

Additionally, Plaintiff has failed to show any type injury.[9] No liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976). The results of the first hearing were remanded. After the rehearing, Turner dismissed the 803 charge with all sanctions and privileges restored including good time credits. (*See* Stobbe affidavit and attachments, doc. # 72-10).

Based on the above reasoning, it is recommended that Defendants' motion for summary judgment be granted and this action dismissed.

### **QUALIFIED IMMUNITY**

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity. Although the burden of showing immunity remains on the Defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a Defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person

---

[9] "In order to prevail on either a procedural or substantive due process claim, an inmate must first demonstrate that he was deprived of 'life, liberty, or property' by governmental action." Rush v. Patterson, 2012 WL 170182, *citing* Bervati v. Smith, 120 F. 3d 500, 502 (4th Cir. 1997). "Further, even assuming, *arguendo*, that Plaintiff's punishment constitutes a deprivation of Plaintiff's liberty and triggers due process rights, the Court finds that Plaintiff received appropriate due process at his disciplinary hearing." Rush, supra.

10

is entitled to immunity from suit. Immunity is a defense to be asserted by the Defendant and the burden of proving entitlement to immunity rests with the Defendant asserting it. Once asserted,

However, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the Defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such,

11

> if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## **ELEVENTH AMENDMENT IMMUNITY**

The Defendants contend that the Plaintiff's §1983 claims them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## **VICARIOUS LIABILITY/SUPERVISORY LIABILITY**

It appears that Plaintiff seeks to hold Defendants Riley, Ozmint, Lane, Hallman, Alexander, Thompson, and Caldwell liable based upon actions or misconduct of their subordinates.[10] However,

---

[7] Caldwell, Associate Warden at TRCI, filed an affidavit stating that she received DHO Turner's Disciplinary Report and Hearing Record pertaining to the April 14, 2010, disciplinary hearing and approved the sanctions imposed as said sanctions complied with SCDC policy OP-22.14, but had no other involvement with the April 14, 2010, disciplinary hearing. (Doc. # 72-7).

Defendants submitted the affidavit of Ann B. Hallman who attests that she is currently the Branch Chief for the Inmate Grievance Branch with the SCDC and her office is responsible for

13

the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 (4th Cir.1977). See also Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.") (*citing* Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

Additionally, Plaintiff has failed to show any personal involvement on the part of Defendants Ozmint, Lane, and Alexander. Therefore, it is recommended they be dismissed.

As to any allegations with regard to the handling of his grievances by Defendants Riley, Hallman, Thompson, and Caldwell, it is recommended that they be dismissed. As to any Defendants named for being involved in the grievance procedure and allegedly improperly handling his grievances, the allegations should be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

---

processing grievances filed by inmates in accordance with SCDC policies. While she has decision making authority in regard to determining the subject matter of the grievances, making institutional decisions regarding inmate grievances rests with the Warden and/or responsible authority. (Doc. # 72-8).

Defendants submitted the affidavit of Christine Thompson who attests that she is employed by the SCDC as an Administrator Coordinator with the Inmate Grievance Branch and has only held the current position for approximately two months. On May 7, 2010, Thompson attests she served Plaintiff with Warden Riley's response to his Step One grievance which was her only involvement with Plaintiff. (Doc. # 72-9).

Defendants submitted the affidavit of Gary D. Lane who attests that he is employed by the SCDC as an Associate Warden at TRCI. Lane asserts that he had no personal involvement or interaction with Plaintiff or the allegations stated in his complaint. (Doc. # 72-11).

Defendants submitted the affidavit of Jerry C. Alexander who attests that he is currently retired after being employed by the SCDC for thirty years as a Correctional Officer IV. Alexander attests that he is not familiar with this lawsuit and had no personal involvement or interaction with Plaintiff or the allegations stated in Plaintiff's complaint. (Doc. #72-12).

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that Defendants' motion for summary judgment (document # 72) be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that any outstanding motions be deemed MOOT.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 30, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**